UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIM. ACTION NO. 3:21-CR-0482-B |
| | § | |
| SHANE HOLTON, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Shane Holton's Motion to Dismiss Superseding Indictment (Doc. 69). Because the Court finds that the statutes challenged by Holton are constitutional, the Court **DENIES** the Motion.

### I.

### BACKGROUND

The Second Superseding Indictment charges Holton with five counts of firearms violations. *See* Doc. 71, Second Superseding Indictment. Holton challenges four of the counts in his Motion. *See* Doc. 69, Mot. Dismiss, 1. Counts One and Two arise under 26 U.S.C. § 5861(d), which states: "It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

Count Three arises under 26 U.S.C. § 5861(h), which states: "It shall be unlawful for any person . . . to receive or possess a firearm having the serial number or other identification required by this chapter obliterated, removed, changed or altered."

Finally, Count Four arises under 18 U.S.C. § 922(k), which states:

> It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

Holton argues in his Motion to Dismiss that § 5861(d), § 5861(h), and § 922(k) are unconstitutional under the Second Amendment and § 922(k) is unconstitutional under the Commerce Clause. Doc. 69, Mot. Dismiss. The Court consider this Motion below.

## III.

## ANALYSIS

*A.   Second Amendment Challenges*

Holton brings facial challenges to three statutes in light of the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) and the Southern District of West Virginia's opinion in *United States v. Price*, 2022 WL 6968457 (S.D. W. Va. Oct. 12, 2022). Doc. 69, Mot. Dismiss, 1–2. Holton argues that "each count of the superseding indictment invokes a statute that burdens conduct protected by the plain text of the Second Amendment," these statutes are "presumptively unconstitutional," and "the Government cannot rebut that presumption." *Id.* at 4. The Government argues that "*Bruen* did not . . . invalidate [§ 5861(d), § 5861(h),] or § 922(k)." Doc. 70, Resp., 5.

The Court begins with a summary of the *Bruen* decision and then addresses each challenged statute in turn. Ultimately, the Court concludes that § 5861(d), § 5861(h), and § 922(k) each pass constitutional muster under the *Bruen* framework.

      1.      The Supreme Court's Decision in *Bruen*

In *Bruen*, the Supreme Court considered New York's public-carry regulations of handguns. 142 S. Ct. at 2122. The regulations prohibited the "possession of all handguns—concealed or otherwise—without a government-issued license." *Id.* To obtain a license to public carry, an applicant had to "demonstrate a special need for self-protection distinguishable from that of the general community." *Id.* at 2123 (quoting *In re Klenosky*, 428 N.Y.S.2d 256, 257 (N.Y. App. Div. 1980)).

While evaluating these regulations, the Supreme Court clarified the proper framework for analyzing Second Amendment challenges. *See id.* at 2125–26. Following the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), lower courts adopted "a 'two-step' framework . . . that combine[d] history with means-end scrutiny." *Id.* at 2125. But the Supreme Court declined to adopt this framework because "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Id.* at 2127. Instead, the Supreme Court held "that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2125. To justify a regulation of such conduct, the Government must show "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

This test requires courts to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. As applied in *Bruen*, the Supreme Court held that New York's public-carry licenses infringed on the "central component" of the petitioners' Second Amendment rights: the right to bear arms in public for self-defense. *See id.* at 2135. And the Government could point to no historical analogue that required "law-abiding,

responsible citizens to 'demonstrate a special need for self-protection distinguishable from that of the general community' in order to carry arms in public." *Id.* at 2156. Thus, the regulations were unconstitutional. *Id.*

### 2. The Challenged Statutes

In examining the challenged statutes, the Court relies on the Supreme Court's guidance in *Bruen* and *Heller*. The Court first determines "whether the plain text of the Second Amendment protects" the conduct regulated by these statutes. *See id.* at 2134. If the Second Amendment guarantees Holton a right to such conduct, the Court will then determine whether the statutes are "consistent with this Nation's historical tradition of firearm regulation." *See id.* at 2135.

In regards to the plain text of the Second Amendment, the Supreme Court's analysis in *Heller* controls. *See id.* at 2134–35. The Second Amendment guarantees that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court in *Heller* first emphasized that the term "the people" "refers to all members of the political community, not an unspecified subset." *See* 554 U.S. at 580. It next determined that the term "keep and bear Arms" refers to the right to "possess and carry weapons in case of confrontation." *See id.* at 592.

However, the Supreme Court also recognized that this right "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. "[L]ongstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms" did not infringe on the rights guaranteed under the Second Amendment. *Id.* at 626–27. Additionally, the arms protected

under the Second Amendment included "those 'in common use at the time'" and excluded "dangerous and unusual weapons." *Id.* at 627.

As to the historical analysis, the Supreme Court acknowledged in *Bruen* that "this historical inquiry that courts must conduct will often involve reasoning by analogy." *See Bruen*, 142 S. Ct. at 2132. This analogical reasoning should focus on at least two metrics when comparing historical and modern regulations: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132–33. But the challenged regulation need not be "a dead ringer for historical precursors . . . to pass constitutional muster." *Id.* Only a "historical analogue" is required, not a "historical twin." *Id.* (emphasis omitted).

With this background in mind, the Court considers the three challenged statutes below.

      *i.*     *Sections 5861(d) and 5861(h)*

Section 5861(d) states: "It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). Section 5861(h) states: "It shall be unlawful for any person . . . to receive or possess a firearm having the serial number or other identification required by this chapter obliterated, removed, changed or altered." 26 U.S.C. § 5861(h). Holton argues that these statutes place prohibitions on possession and thus violate the Second Amendment. Doc. 69, Mot. Dismiss, 5.

The Court finds that these statutes do not regulate protected conduct under the Second Amendment. These statutes fall under the National Firearms Act ("NFA"), 26 U.S.C. §§ 5801–5872. The Supreme Court has stated that "[i]t is . . . clear from the face of the Act that the NFA's object was to regulate certain weapons likely to be used for criminal purposes . . . ." *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517 (1992); *see also* H.R. Rep. No. 1337, 83d

Cong., 2d Sess., A395 (1954) (indicating "congressional intent to cover under the National Firearms Act only such modern and lethal weapons . . . as could be used readily and efficiently by criminals and gangsters"). The Supreme Court in *Bruen* and *Heller* confirmed that such weapons are not protected under the Second Amendment. *Bruen*, 142 S. Ct. at 2128 ("[T]he right [is] not a right to keep and carry any weapon . . . . The Second Amendment protects the possession of weapons that [were] in 'common use at the time.'"); *Heller*, 554 U.S. at 625 ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes . . . ."). Thus, the challenged statutes regulate conduct not protected by the Second Amendment. Holton does not challenge and the Court does not question the characterization of the NFA as a statute regulating dangerous and unusual weapons. Thus, the Court need not conduct further analysis into the challenged statutes.

Thus, because § 5861(d) and § 5861(h) do not prohibit conduct protected by the Second Amendment, the Court finds that these statutes are constitutional.

>    ii.     *Section 922(k)*

Section 922(k) states:

> It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce**.**

18 U.S.C. § 922(k).

Holton argues that this Court should follow the decision in *United States v. Price* and hold that § 922(k) is unconstitutional. Doc. 69, Mot. Dismiss, 2. The Government argues that *Price* was wrongly decided. Doc. 70, Resp., 7.

In *Price*, the court found that § 922(k) is not a "mere commercial regulation" but instead "infringe[s] on one's right to possess a firearm." 2022 WL 6968457, at *3. The court imagines a hypothetical law-abiding citizen that purchases a firearm which complies with § 922(k) and then proceeds to remove the serial number. *See Price*, 2022 WL 6968457, at *3. According to *Price*, "while the law-abiding citizen's possession of the firearm was originally legal, it became illegal only because the serial number was removed. He could be prosecuted federally for his possession of it. That is the definition of an infringement on one's right to possess a firearm." *Id.* The example goes on to imagine this citizen's law-abiding daughter who inherits the serial-numberless gun, displays it in his memory, and thus violates § 922(k), "despite the fact that it was legally purchased by her father and despite the fact that she was not the person who removed the serial number." *Id.* The *Price* court concludes that this scenario "makes clear" that § 922(k) is a "blatant prohibition on possession." *Id.*

The court then considered "whether Section 922(k) is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id.* at *4 (citing *Bruen*, 142 S. Ct. at 2130). After its analysis, the court concluded that "[a] firearm without a serial number in 1791 was certainly not considered dangerous or unusual compared to other firearms because serial numbers were not required or even commonly used at that time." *Id.* at *6. Thus, § 922(k) was not "part of . . . the historical tradition that delimits the outer bounds of the right to keep and bear arms" and was unconstitutional. *Id.*

This Court declines to follow the *Price* court's interpretation of § 922(k). The Supreme Court has identified two regulations that do implicate possession. The first, in *Heller*, banned handgun possession in the home. *Id.* at 635. The second, in *Bruen*, prohibited individuals from carrying a handgun in public without a special showing of need. 142 S. Ct. at 2156. While the Court does not now attempt to define the outermost limits of possession, the Supreme Court has instructed lower

courts to apply the plain text of the Second Amendment. *Bruen*, 142 S. Ct. at 2126. This Court does not believe that a law requiring serial numbers on firearms infringes on the right to keep and bear arms.

Further, the *Price* court's "law-abiding citizens" example misconstrues the breadth of the protections of the Second Amendment. While § 922(k) may restrict one manner in which individuals may keep and carry firearms, this restriction does not infringe on an individual's right to bear arms for self-defense. The Second Amendment "is not a right to keep and carry any weapon whatsoever in any manner whatsoever." *Heller*, 554 U.S. at 626. Further, firearms of similar make and model are essentially fungible, and "the presence of a serial number does not impair the use or functioning of a weapon in any way[.] . . . [A] person is just as capable of defending himself with a marked firearm as with an unmarked firearm." *U.S. v. Marzzarella*, 614 F.3d 85, 94 (3d Cir. 2010). The Second Amendment does not protect the *Price* court's law-abiding citizens' rights to any gun. However, it does protect their right to possess and carry an otherwise lawful gun *with a serial number* for self-defense. For these reasons, the Court finds that this statute does not infringe an individual's right to possess a firearm.

And even if § 922(k) did infringe on such rights, the Government has identified relevant historical analogues to meet its burden under *Bruen*. The Supreme Court in *Bruen* emphasized that the most compelling historical evidence was that immediately preceding and succeeding the ratification of the Second Amendment in 1791. *See Bruen*, 142 S. Ct. at 2136–37. The Government points to several different historical regulations during these time periods that governed the registration and sale of firearms. *See* Doc. 70, Resp., 13–14. The Court addresses these below.

The Government first points to several commercial firearms regulations. Doc. 70, Resp., 13–14. Importantly, "colonial governments substantially controlled the firearms trade. The government provided and stored guns, controlled the conditions of trade, and financially supported private firearms manufacturers." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017). Several states restricted where and to whom individuals could sell guns. *Id.* The Ninth Circuit in *Teixeira* provides a summary of such restrictions. *See id.* (listing laws from Massachusetts, Connecticut, Maryland, and Virginia that regulated where and to whom individuals could sell guns).

Further, the Government lists several regulations which applied to firearm owners, such as registration and taxation requirements. Doc. 70, Resp., 13–14. "A 1631 Virginia law required the recording not only of all new arrivals to the colony, but also 'of arms and munitions.'" Robert Spitzer, *Gun Law History in the United States and the Second Amendment*, 80 Law & Contemp. Probs. 55, 76 (2017) (citing Virginia Act of Feb. 27, 1631, Act LVI). Similarly, the Founders implemented "mandatory musters" which required individuals with a gun to "show up and register their firearm." Meg Penrose, *A Return to the States' Rights Model: Amending the Constitution's Most Controversial and Misunderstood Provision*, 46 Conn. L. Rev. 1463, 1483 (2014); *Minutes from a Convention of the Federalist Society: Civil Rights: The Heller Case*, 4 NYU J.L. & Liberty 293, 309 (2009). Finally, states imposed taxes on personally held firearms as early as 1607 and well into the 1800s. Spitzer, *supra*, at 60, 76 (citing laws).

The Court finds that these historical regulations are sufficiently analogous to § 922(k) to pass "constitutional muster" under *Bruen*. 142 S. Ct. at 2134. Several regulations were enacted to address the illegal trading and trafficking of arms and ammunition. *See* Spitzer, *supra*, at 76. Others were aimed at preventing the sale of firearms to Indian tribes. *See Teixeira*, 873 F.3d at 685. These

historical regulations and § 922(k), while effected by different means, address similar goals: (1) controlling and tracing the sale of firearms and (2) ensuring dangerous individuals did not obtain firearms. As addressed in *Marzzarella*, the Gun Control Act of 1968, which included § 922(k), was enacted to "keep firearms away from the persons Congress classified as potentially irresponsible and dangerous. 614 F.3d at 98 (citing *Barrett v. United States*, 423 U.S. 212, 218 (1976)). Section 922(k) was intended to assist law enforcement in tracing and identifying the owner and source of firearms used in crimes. *Id.*

Section 922(k) and these historical regulations place "comparable burden[s] on the right of armed self-defense." *Bruen*, 142 S. Ct. at 2133. *Not removing* the serial number from a firearm requires no action from the firearm's owner and thus imposes an arguably negligible burden, especially because "the presence of a serial number does not impair the use or functioning of a weapon in any way." *Marzzarella*, 614 F.3d at 94. Similarly, because "a person is just as capable of defending himself with a marked firearm as with an unmarked firearm," requiring individuals to purchase firearms with serial numbers imposes little to no burden on individuals' right to bear arms. *See id.* In contrast, sale restrictions, mandatory firearm registration, and taxes on personally held firearms imposed greater burdens on firearm owners and sellers.

Again, *Bruen* does not require a "historical twin." 142 S. Ct. at 2133 (emphasis omitted). In contrast to the *Price* court's assertions, the non-existence of serial numbers at the founding does not doom § 922(k). *Price*, 2022 WL 6968457, at *6; *see Bruen*, 142 S. Ct. at 2132 ("Much like we use history to determine which modern 'arms' are protected by the Second Amendment, so too does history guide our consideration of modern regulations that were unimaginable at the founding."). Indeed, between the Price court's expansive interpretation of "possession" and its rigid interpretation

of history, it is hard to imagine what gun laws would not fall within Second Amendment protection. Thus, because § 922(k) is "consistent with the Second Amendment's text and historical understanding," the Court finds that § 922(k) is constitutional. *Bruen*, 142 S. Ct. at 2131.

B.  *Commerce Clause Challenge*

Holton also argues that § 922(k) "reaches a broad swath of non-commercial activity that has no connection at all to any of [the Commerce Clause's] authorized areas of regulation" and thus is unconstitutional under the Commerce Clause. Doc. 69, Mot., 8. The Government argues that Holton's argument is foreclosed by circuit precedent. Doc. 70, Resp., 2 n.1. The Court agrees with the Government.

The Fifth Circuit has repeatedly held that § 922(g)(1),[1] which includes a jurisdictional nexus requirement similar to § 922(k), is "a valid exercise of Congress's authority under the Commerce Clause" and that "this issue is foreclosed." *United States v. Tiner*, 2014 WL 4063335, at *4 (N.D. Tex. Aug. 15, 2014) (quoting *United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013), *cert. denied*, 572 U.S. 1028 (2014)). It has also affirmed convictions under § 922(n)[2] because "the constitutional issue . . . is foreclosed by precedent rejecting similar arguments with respect to 18 U.S.C. § 922(g) which includes a jurisdictional nexus requirement like that in § 922(n)." *United States v. Waldman*, 2021 WL 6101365, at *1 (5th Cir. Dec. 21, 2021), *cert. denied*, 142 S. Ct. 2662 (2022).

---

[1] Section 922(g)(1) states: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

[2] Section 922(n) states: "It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

Given the Fifth Circuit's repeated refusal to reconsider its position as to § 922(g)(1) and its summary affirmance of a conviction under § 922(n), along with the similar jurisdictional requirement in § 922(k), this Court finds that Holton's Commerce Clause challenge as to § 922(k) is "foreclosed by precedent." *See id.*

### IV.

### CONCLUSION

For these reasons, the Court **DENIES** Holton's Motion to Dismiss (Doc. 69).

**SO ORDERED.**

**SIGNED: November 3, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE